IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-312-FL

| | |
|---|---|
| HERSEY FENNELL, JR., )<br>)<br>Plaintiff/Claimant, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-21, DE-25] pursuant to Fed. R. Civ. P. 12(c). Claimant Hersey Fennell, Jr. ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the partial denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on February 25, 2013, alleging disability beginning July 31, 2012. (R. 149–61). The claim was denied initially and upon reconsideration. (R. 65–83). A hearing before an Administrative Law Judge ("ALJ") was held on December 3, 2014, at which Claimant, represented by counsel, and a vocational expert ("VE")

appeared and testified. (R. 40–64). On January 23, 2015, the ALJ issued a decision finding Claimant was entitled to a closed period of disability from July 31, 2012 through January 1, 2014, and denying Claimant's request for benefits thereafter. (R. 17–39). On July 14, 2016, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

Initially, the disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In a case such as this, where benefits are awarded for a "closed period," the ALJ additionally determines whether the claimant has experienced "medical improvement" related to the claimant's ability to work such that the claimant is able to engage in substantial gainful activity. 20 C.F.R. § 404.1594(a); 42 U.S.C. § 423(f); *see Craft v. Colvin*, No. 4:12-CV-184-BO, 2013 WL 4674857, at *2 (E.D.N.C. Aug. 30, 2013). Medical improvement is defined as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision" establishing disability. 20 C.F.R. § 404.1594(b)(1). The determination "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)." *Id.* Medical improvement is related to the ability to work if the improvement results in an "increase in [the] functional capacity to do basic work activities." *Id.* § 404.1594(b)(3).

The burden of establishing medical improvement rests with the Commissioner. *Craft*, 2013 WL 4674857, at *2 (citing *Lively v. Bowen*, 858 F.2d 177, 181 n.2 (4th Cir. 1988)).

## IV. ALJ'S FINDINGS

At step one, the ALJ found Claimant had not engaged in substantial gainful activity since July 31, 2012, the date Claimant became disabled. (R. 25). Next, the ALJ determined Claimant had the severe impairment of status post multiple hernia repairs and the non-severe impairments of diabetes mellitus and hypertension from July 31, 2012 through January 1, 2014. (R. 25–26). At step three, the ALJ concluded Claimant's impairments, from July 31, 2012 through January 1, 2014, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26). Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding that from July 31, 2012 through January 1, 2014, Claimant had the ability to perform sedentary work[1] with the following restrictions: perform postural activities occasionally, no overhead reaching or climbing of ladders, ropes, or scaffolds, and requires two extra 20-minute breaks in the morning and afternoon. (R. 26–29). In making this assessment, the ALJ found Claimant's statements about his limitations were generally credible. (R. 28). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work from July 31, 2012 through January 1, 2014. (R. 29). At step five, upon considering Claimant's age, education, work experience and RFC, the ALJ

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

determined that from July 31, 2012 through January 1, 2014, there were no jobs that exist in significant numbers in the national economy that Claimant could have performed. (R. 29–30).

The ALJ next found that since January 2, 2014, Claimant developed the additional impairment of lumbar spondylosis and that his status post multiple hernias continued to be a severe impairment. (R. 30). However, the ALJ concluded these impairments did not meet or equal a listed impairment. (R. 30–31). The ALJ determined that medical improvement had occurred and was related to the ability to work as of January 2, 2014. (R. 31). The ALJ found that since January 2, 2014, Claimant had the ability to perform sedentary work with the following restrictions: perform postural activities occasionally, and no overhead reaching or climbing of ladders, ropes, or scaffolds. (R. 31–34). In making this assessment, the ALJ found Claimant's statements about his limitations were not entirely credible. (R. 32). The ALJ found Claimant was still unable to perform his past relevant work. (R. 34). Nevertheless, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that since January 2, 2014, there were jobs that exist in significant numbers in the national economy that Claimant could perform. *Id.* Accordingly, the ALJ concluded that Claimant's disability ended on January 2, 2014. (R. 35).

Claimant alleges the ALJ erred by (1) failing to appropriately consider Claimant's age in applying the Medical Vocational Guidelines (the "Grids"), (2) failing to appropriately weigh a treating physician's opinion, and (3) failing to resolve an apparent conflict between the VE's testimony and the DOT. Pl.'s Mem. [DE-22] at 17–27.[2]

---

[2] Where the document's internal page number differs from the page number assigned by CM/ECF, as here, the court references the CM/ECF page number.

## V. DISCUSSION

### A. Application of the Grids

Claimant contends the ALJ erred by failing to appropriately consider his age in applying the Grids. Pl.'s Mem. [DE-22] at 17–20. Specifically, Claimant argues that the ALJ should have considered his borderline age situation and that use of the higher age category would have directed a finding of disabled under the Grids. *Id.* The Commissioner counters that the ALJ's determinaton was appropriate because Claimant failed to demonstrate the requisite vocational adversities necessary to justify use of a higher age category. Def.'s Mem. [DE-26] at 3–7.

A claimant's age is a vocational factor in the disability determination. 20 C.F.R. § 404.1563(a). Individuals are classified into one of three age categories: a "younger person" is under the age of 50; a "person closely approaching advanced age" is age 50–54; and a "person of advanced age" is age 55 or older. *Id.* § 404.1563(c)–(e). For a "younger person" age is generally not considered to "seriously affect [the] ability to adjust to other work." *Id.* § 404.1563(c). However, for a "person closely approaching advanced age," the claimant's age along with a "severe impairment(s) and limited work experience may seriously affect [the] ability to adjust to other work." *Id.* § 404.1563(d). At "advanced age," the age factor is considered to "significantly affect[] a person's ability to adjust to other work. *Id.* § 404.1563(e). Therefore, "advancing age" is an "increasingly limiting factor" in the ability to adjust to other work. *Id.* § 404.1563(a).

At step five the ALJ uses each age category that applies during the disability determination period, which here extends through the date of decision. *Id.* § 404.1563(b); *see Mitchell v. Astrue*, No. 3:10-CV-544-RJC-DSC, 2011 WL 5037134, at *2 (W.D.N.C. Oct. 24, 2011) ("The ALJ must look to the Claimant's age from the time she alleges she was disabled until the date the ALJ

announces his decision.") (citing 20 C.F.R. § 416.963(b)). In a "borderline situation," where the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled," the regulations provide that the age categories will not be mechanically applied and the ALJ will "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R. § 404.1563(b).

Claimant's birth date is May 19, 1965. (R. 149). On the date Claimant filed his application, February 25, 2013, he was 47 years old, and on the date of the ALJ's decision, August 29, 2013, he was 49 years old. Thus, at all times during the disability period Claimant was a "younger person," and the ALJ classified him as such. 20 C.F.R. § 416.963(c); (R. 29, 34). However, Claimant was only four months short of attaining age 50 on the date of decision, which he contends presents a "borderline situation" requiring the ALJ to consider using the older age category for a "person closely approaching advanced age." Pl.'s Mem. [DE-22] at 19. Claimant asserts, and Defendant does not appear to contest, that had the ALJ utilized the category for a "person closely approaching advanced age," a finding of disabled would have been directed pursuant to Grid Rule 201.14. *Id.*

The court must first determine whether a claimant within four months of reaching an older age category presents a "borderline situation." The regulation does not prescribe a hard and fast rule but rather defines the period as "within a few days to a few months." 20 C.F.R. § 404.1563(b). However, case law within the Fourth Circuit suggests that four months from an older age category is a borderline situation. *See Tanner v. Colvin*, No. 4:15-CV-27-FL, 2016 WL 626493, at *6 (E.D.N.C. Jan. 26, 2016) (collecting cases), *adopted by* 2016 WL 617431 (Feb. 16, 2016). Thus, the fact that Claimant was within four months of the next age category during the relevant period

presents a borderline situation.

The Commissioner argues that even assuming a borderline situation, Claimant must show that he has additional vocational adversities justifying use of the higher age category and that he has failed to make the requisite showing. Def.'s Mem. [DE-26] at 4–7. However, the ALJ determined that Claimant's "ability to perform all or substantially all of the requirements of [sedentary] work has been impeded by additional limitations," specifically the non-exertional limitations of performing postural activities no more than occasionally, and no overhead reaching or climbing of ladders, ropes, or scaffolds. (R. 31, 34). These limitations are additional vocational adversities that may justify application of the higher age category. *See Ash v. Colvin*, No. 2:13-CV-47, 2014 WL 1806771, at *9 (N.D.W. Va. May 7, 2014) (finding that frequent postural limitations, such as a frequent stooping limitation for a claimant with a sedentary RFC, and no overhead reaching for a claimant with a sedentary RFC were additional vocational adversities) (citing Program Operations Manual System ("POMS"), DI 25015.005, effective Mar. 22, 2011–Mar. 24, 2016).

Finally, at step five the ALJ found that Claimant's age category had not changed since January 2, 2014 (R. 34), which was approximately one year before the date of decision, and there is no indication the ALJ recognized that Claimant's case presented a borderline situation as of the date of decision. *See Mitchell*, 2011 WL 5037134, at *2 (concluding that where the ALJ at step five cited Claimant's age on the alleged onset date, when she was five years from the next age category, the ALJ may not have noticed that she was in the borderline range at the time of decision or may not have known he was to consider her age at the time of decision). The court is unable to conduct a meaningful review of the ALJ's decision where it is not apparent whether the ALJ considered applying the higher age category or even if he recognized this was a borderline situation, because the

decision is devoid of any discussion on this issue.[3] *See Campbell v. Colvin*, No. 1:15-CV-165, 2015 WL 8484457, at *3 (M.D.N.C. Dec. 9, 2015) ("[M]any district courts in the Fourth Circuit have required the ALJ to provide some analysis and make express findings in borderline age situations.") (citing *Hofler v. Astrue*, No. 4:11-CV-172, 2013 WL 442118, at *8 (E.D. Va. Jan. 9, 2013) (collecting cases), *adopted by* 2013 WL 442880 (E.D. Va. Feb. 5, 2013)); *see also Bowen v. Berryhill*, No. 5:16-CV-65-FL, 2017 WL 1194462, at *4 (E.D.N.C. Mar. 31, 2017) ("[C]ourts may not accept appellate counsel's post hoc rationalizations for agency action," and "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 50 (1983)). Accordingly, where it is unclear whether the ALJ considered applying the older age category as required by 20 C.F.R. § 404.1563(b), it is recommended that the case be remanded for further consideration of this issue.

## B. The Treating Physician's Opinion

Claimant contends that the ALJ erred in evaluating opinion evidence from Claimant's treating physician. Pl.'s Mem. [DE-22] at 20–25. The Commissioner counters that the ALJ properly evaluated the opinion and substantial evidence supports the determination. Def.'s Mem. [DE-26] at 7–11.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received.

---

[3] It is noted that the Appeals Council, in denying review, stated that it considered Claimant's borderline age situation but found the factors do not support application of the higher age category. (R. 2). However, the Commissioner makes no argument as to the import of the Appeals Council's consideration of the issue, Def.'s Mem. [DE-26] at 3–7, and the court declines to consider it without briefing from the parties.

9

*Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[4] An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a

---

[4] Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

10

physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

Claimant contends the ALJ erred by only assessing the consistency factor when weighing the February 2, 2014 opinion of Dr. Zinicola (R. 579–80), Claimant's treating physician, and that the length of treatment, narcotic pain medications, and direct contact between Dr. Zinicola and Claimant should have also been discussed. Pl.'s Mem. [DE-22] at 22–25. The ALJ summarized and assessed Dr. Zinicola's opinion as follows:

> I have considered the February 2014 opinion of Dr. Zinicola that the claimant can: occasionally lift less than 10 pounds; rarely lift 10–15 pounds; occasionally carry up to 5 pounds; never carry 10 pounds; never walk one city block or more without rest or severe pain; and never obtain and retain work in a competitive work environment, 8 hours per day, 5 days per week for a continuous period of 6 months or more. Dr. Zinicola also noted that the claimant requires unscheduled work breaks, which would require being away from the work area during an 8-hour work day. He added that the claimant needs to lie down for 20 minutes at a time and for a total of 1 hour during an 8-hour work day. Dr. Zinicola stated that the claimant would be off task for 10% of the work day or less due to the claimant's physical and/or mental limitations but his pain and fatigue are frequently severe enough to interfere with attention and concentration needed to perform simple work tasks. Dr. Zinicola stated that the claimant would likely be absent from work 4 days per month due to his impairments or medical treatment. (Exhibits 11F and 13F). I accord this opinion little weight, as treatment notes since January 2, 2014 showed that the claimant's pain was well controlled and he experienced good results since his last surgery. (Exhibits 10F and 13F). Such evidence does not support Dr. Zinicola's extreme restrictions.

(R. 32–33).

The ALJ is not required to discuss all the relevant factors listed in § 404.1527(c), but "must give good reasons for the weight assigned to a treating source's opinion." *Harrison v. Berryhill*, No. 4:16-CV-227-FL, 2017 WL 3669630, at *3 (E.D.N.C. Aug. 7, 2017) (citations and internal quotation marks omitted), *adopted by* 2017 WL 3669515 (Aug. 24, 2017). The ALJ appropriately considered

11

the consistency of Dr. Zinicola's opinion with his treatment notes, as consistency is a relevant factor in evaluating opinion evidence. *Id.* § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Even a treating physician's opinion may be given less weight where it is not supported by the physician's own treatment notes. *See Dunn v. Colvin*, 607 F. App'x 264, 269 (4th Cir. 2015) (citing *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014)); *Mery v. Colvin*, No. 7:15-CV-104-FL, 2016 WL 4540815, at *8 (E.D.N.C. Aug. 30, 2016) (finding no error in the ALJ's assignment of little weight to portions of treating physician's opinion that were inconsistent with the physician's treatment records). The ALJ found that Dr. Zinicola's treatment notes beginning in December 2013 and continuing through 2014 and treatment notes from a December 17, 2013 post-surgical follow up indicated Claimant's reported pain had significantly improved and that it was generally well-controlled with pain medications. (R. 29, 32–33, 567–68, 593–94, 635–39). While Claimant contends the ALJ did not consider Claimant's testimony regarding his continued pain despite medication in connection with evaluating Dr. Zinicola's opinion, the ALJ did discuss this evidence elsewhere in the decision (R. 28), and the ALJ found that the treatment notes beginning in December 2013 were inconsistent with Claimant's allegations of continued severe pain (R. 32). Notwithstanding, additional evidence incorporated into the record by the Appeals Council, which was not before the ALJ, calls into question whether the weight afforded to Dr. Zinicola's opinion is supported by substantial evidence.

Claimant contends Dr. Zinicola's opinion is supported by a May 3, 2016 Functional Capacity Evaluation ("FCE"), not before the ALJ, which the Appeals Council considered and incorporated into the record. (R. 1–5, 674–78). When the Appeals Council "specifically incorporate[s]

12

[evidence] into the record, the remaining task for the court is to 'review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Gentry v. Colvin*, No. 2:13-CV-66-FL, 2015 WL 1456131, at *3 (E.D.N.C. Mar. 30, 2015) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991), *superseded on other grounds by* 20 C.F.R. § 404.1527). The FCE largely corroborates Dr. Zinicola's conclusions regarding Claimant's limitations. Testing indicated that Claimant had significant difficulty with all activities, including sitting, standing, walking, lifting, stooping, and squatting. (R. 677–78). The ALJ found that Claimant could perform sedentary work, including sitting for six hours of an eight-hour workday. (R. 31). The FCE testing indicated Claimant "was able to sit for 16 minutes with pain at 8/10 in right lower extremity. He was unable to sit in proper posture due to radicular pain in his lower back and lower extremity. He also demonstrates limited right hip and lumbar ROM to sit in proper posture." (R. 677). This evidence lends support to Dr. Zinicola's conclusion that Claimant would need to take unscheduled breaks to lie down or recline for 20 minutes at a time due to fatigue or pain. (R. 580). Furthermore, the FCE testing also demonstrated Claimant has reduced strength of varying degrees in all areas except his ankles, reduced range of motion in several areas, an antalgic gait pattern on the right, and a positive lumbar Slump Test. (R. 676). Given the potential for this evidence to bolster the opinion of Dr. Zinicola and to contradict the level of improvement found by the ALJ, it is recommended that the FCE be considered by the ALJ on remand.

### C. The VE's Testimony and the DOT

Claimant contends the ALJ failed to identify an apparent conflict between the VE's testimony and the DOT, specifically the VE's conclusion that Claimant could perform jobs requiring frequent

13

or constant reaching and the limitation in the hypothetical to no overhead reaching. Pl.'s Mem. [DE-22] at 25–27. The Commissioner argues that the ALJ appropriately relied on the VE's testimony where the VE agreed to identify conflicts between her testimony and the DOT and did not note any such conflicts. Def.'s Mem. [DE-26] at 12. The Commissioner further contends that there is no apparent conflict between reaching and overhead reaching. *Id.* at 12–13.

Pursuant to Ruling 00-4p, the ALJ must "inquire, on the record, . . . whether the vocational expert's testimony conflict[s] with the [DOT], and [the Ruling] also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the [DOT]." *Pearson v. Colvin*, 810 F.3d 204, 207–08 (4th Cir. 2015) (internal quotation marks omitted) (citing S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). However, not "all possible conflicts must be identified and resolved," but rather only "apparent conflicts," i.e., "where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Id.* at 209. The ALJ must elicit from the VE "a reasonable explanation for the apparent conflict," S.S.R. 00-4p, at *4, and the ALJ has not fulfilled his duty to fully develop the record if it "contains an unresolved conflict between the expert's testimony and the [DOT]" or if the ALJ "ignores an apparent conflict because the expert testified that no conflict existed." *Pearson*, 810 F.3d at 210. "An expert's testimony that apparently conflicts with the [DOT] can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209–10.

The ALJ, in reliance on the VE's testimony, identified three representative occupations an individual with Claimant's age, education, work experience, and RFC would be able to perform: cigarette machine maker, DOT 529.666-014, 460,000 jobs in the national economy; weight tester,

14

DOT 539.485-010, 467,000 jobs in the national economy; and buckler lacer DOT 788.687-022, 499,000 jobs in the national economy. (R. 34, 59–60). At the outset of the VE's testimony, the ALJ asked the VE to point out if her testimony varied with information contained in the DOT. (R. 56). The VE agreed to do so but did not identify any conflicts. (R. 56–64).

The ALJ limited Claimant to no "overhead reaching" in the hypothetical to the VE and in the RFC. (R. 31, 59). Each of the occupations identified by the VE require either frequent or constant "reaching." *See* DICOT 529.666-014, Cigarette-Making-Machine Catcher ("Reaching: Constantly - Exists 2/3 or more of the time); 539.485-010, Weight Tester (Reaching: Frequently - Exists from 1/3 to 2/3 of the time); 788.687-022, Buckler and Lacer (Reaching: Constantly - Exists 2/3 or more of the time). In *Pearson*, the Fourth Circuit considered a nearly identical set of facts and concluded an apparent conflict existed, explaining as follows:

> Although the Dictionary does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, the Dictionary's broad definition of "reaching" means that they certainly may require such reaching. Comparing the Dictionary definition to Pearson's limitations, the vocational expert's testimony that Pearson could fulfill the requirements of these occupations apparently conflicts with the Dictionary. Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching. If the explanation does not provide a reasonable basis for relying on the expert's testimony, that testimony cannot provide substantial evidence for a denial of benefits. If the expert's explanation is reasonable, the ALJ can resolve the apparent conflict with the Dictionary and rely on the expert's testimony.

> Deciding that the vocational expert's testimony apparently conflicts with the Dictionary here does not mean that an ALJ must find Pearson, or any other claimant with this limitation, unable to perform these jobs. Rather, it simply means that the ALJ and the expert should address exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements.

810 F.3d at 211.[5] Furthermore, the *Pearson* court held that "[t]he ALJ independently must identify conflicts between the expert's testimony and the Dictionary" and cannot rely on the VE's testimony that no conflict exists when one in fact does. *Id.* at 208–09; *see also id.* at 210 ("An ALJ has not fully developed the record if it contains an unresolved conflict between the expert's testimony and the Dictionary. Nor has the ALJ fulfilled this duty if he ignores an apparent conflict because the expert testified that no conflict existed."). The VE's testimony that Claimant could perform occupations requiring frequent or constant reaching was in apparent conflict with the limitation in the hypothetical to no overhead reaching. Accordingly, it is recommended that the matter be remanded to the ALJ to resolve the apparent conflict.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-21] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-25] be DENIED, and the matter be remanded to the Commissioner for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 14, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R.

---

[5] Where *Pearson* is controlling of the outcome in this case, the out-of-circuit case law relied upon by the Commissioner, Def.'s Mem. [DE-26] at 12–13, is not addressed.

Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **seven (7) days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

SUBMITTED, this the 31st day of August 2017.

*[signature]*
Robert B. Jones, Jr.
United States Magistrate Judge

17